UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARIM HASAN PRICE,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JOHN SUTTON, et al.,<br><br>　　　　Defendants. | 1:19-cv-00717-DAD-GSA-PC<br><br>**SCREENING ORDER**<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 1.)**<br><br>**THIRTY-DAY DEADLINE TO FILE FIRST AMENDED COMPLAINT** |

**I.　　BACKGROUND**

　　Karim Hasan Price ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action under 42 U.S.C. § 1983. On May 22, 2019, Plaintiff filed the Complaint commencing this action, which is now before the court for screening. 28 U.S.C. § 1915. (ECF No. 1.)

**II.　　SCREENING REQUIREMENT**

　　The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.  SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at the California Rehabilitation Center in Norco, California. The events at issue in the Complaint allegedly took place at Wasco State Prison in Wasco, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants John Sutton (Warden), H. Reyes (Sergeant), C/O I. Miller (Family Visiting Coordinator), Correctional Officer (C/O) Rosales, C/O Andrade, and C/O Carmona (collectively, "Defendants"). A summary of Plaintiff's allegations follows:

Plaintiff alleges that his rights were violated when he was subjected to a contraband watch under unsanitary conditions with a female guard present. On October 28, 2017, at the conclusion of a scheduled family visit, Plaintiff was escorted by defendant C/O I. Miller, a female correctional guard, to undergo a full body scan, which was performed by defendant C/O Andrade.

C/O Miller and C/O Andrade began accusing Plaintiff of having contraband secreted inside his body. Plaintiff was adamant that he did not have any contraband and he complied fully with additional body scans. C/O Andrade summoned defendant Sgt. H. Reyes to review the scan results. C/O Andrade, C/O Miller, and Sgt. Reyes continued to accuse Plaintiff of having contraband and ignored Plaintiff's insistence that he was not in possession of any contraband. Sgt. Reyes summoned defendants C/O Rosales and C/O Carmona to a visiting room. After conferring with each other, C/O Rosales left, then returned with a plastic bag and a white bucket. C/O Andrade taped the plastic bag to the rim of the bucket, all in the presence of Sgt. Reyes, who ordered Plaintiff to squat on top of the bucket and defecate inside of the bucket so that the contents of his stomach could be examined, all in the presence of female guard C/O I. Miller. Plaintiff was not moved to a sanitary setting, and the CDCR Departmental Procedure was not initially initiated by Sgt. Reyes. No CDCR 114-D segregation order was issued by Sgt. Reyes before ordering Plaintiff to comply with the search. Plaintiff was forced to defecate into the plastic bag with C/O Rosales, C/O Carmona, C/O Andrade, and C/O Miller standing over him. Afterwards, Plaintiff was ordered to dress while the contents of the bag were searched for contraband. No contraband was found.

As relief, Plaintiff requests compensatory damages, punitive damages, and exemplary damages.

## IV.     PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v.

Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

**A.  Strip Searches and Contraband Watch – Applicable Authorities**

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Hunt v. Martinez, No. 218CV3025JAMKJNP, 2020 WL 564815, at *4 (E.D. Cal. Feb. 5, 2020), report and recommendation adopted, No. 218CV3025JAMKJNP, 2020 WL 1433000 (E.D. Cal. Mar. 24, 2020) citing Estelle v. Gamble, 429 U.S. 97, 102 (1976) (citation omitted). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective

requirement that the prison official has a "sufficiently culpable state of mind." Id. citing Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted).

The United States Supreme Court and the Ninth Circuit have held that routine visual strip searches do not unreasonably infringe on prisoners' constitutional rights. Hunt, 2020 WL 564815, at 4, citing Florence v. Board. of Chosen Freeholders, 566 U.S. 318, 328 (2012) (upheld, under the Fourth Amendment, a blanket strip search and visual body cavity search for detainees entering detention facilities to detect and deter contraband); Bell v. Wolfish, 441 U.S. 520, 558-60 (1979) (found visual body cavity searches conducted after contact visits used to prevent prisoners' possession of weapons and contraband, even absent probable cause, reasonable under the Fourth Amendment); Michenfelder v. Sumner, 860 F.2d 328, 333-34 (9th Cir. 1988) (held that routine visual body cavity searches conducted in hallways did not violate the Fourth Amendment after situations where inmates had been presented with the opportunity to obtain contraband or a weapon); Rickman v. Avaniti, 854 F.2d 327 (9th Cir. 1988) (upheld prison policy requiring visual strip and body cavity searches every time administrative segregation prisoners left their cells).

A contraband surveillance watch (CSW) has been explained accurately as "a special temporary confinement used to determine whether an inmate has ingested or secreted contraband in his digestive tract and, if so, to recover it." Chappell v. Mandeville (Chappell I), No. S–03–0653–GEB–KJM–P, 2009 U.S. Dist. LEXIS 26782, 2009 WL 900151 at * 3, n. 5 (E.D. Cal. March 31, 2009). "California's CSW procedures are not unconstitutional per se, Chappell v. Mandeville (Chappell II), 706 F.3d 1052, 1057-62 (9th Cir. 2013), and "just putting plaintiff on CSW (whether it be making the decision or physically escorting plaintiff to the CSW unit) does not establish a plausible claim for a constitutional violation," Fletcher v. Swarthout, No. 2:14-cv-0567 DB P, 2016 WL 6135870, * 5 (E.D. Cal. Oct. 21, 2016) (granting motion to dismiss Eighth Amendment claim with regard to placement and retention on ). Rather, it is the particular watch conditions that establish constitutional violations. Id., at * 6.

Physical sexual assault violates the Eighth Amendment. Hunt, 2020 WL 564815, at *4, citing Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (2000). On the other hand, claims alleging

5

brief inappropriate touching with sexual overtones have been dismissed as non-cognizable under the Eighth Amendment. Id., citing see Watison v. Carter, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (finding defendant's conduct "not objectively harmful enough" and prisoner's humiliation not severe enough to state an Eighth Amendment claim where defendant officer allegedly entered prisoner's cell while he was on the toilet, rubbed his thigh against the prisoner's thigh and began smiling in a sexual way, and left prisoner's cell laughing).

Where no inappropriate touching is pled, claims alleging mere verbal sexual harassment or otherwise sexually inappropriate conduct have generally been found to be noncognizable under the Eighth Amendment. Hunt, 2020 WL 564815, at *4, citing see, e.g., Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) ("[T]he Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment."); Alverto v. Dep't of Corrs., 2013 WL 1750710, at *11-12 (W.D. Wash. Feb. 15, 2013) (finding search not objectively harmful enough and recommending summary judgment for defendant correctional officer on Eighth Amendment claim where defendant, during a strip search of prisoner, said, "[L]et's see how long your wiener hangs" and "lustfully stare[d] at his body" in a search that lasted approximately two minutes), adopted by 2013 WL 1743878 (W.D. Wash. Apr. 23, 2013); Johnson v. Carroll, 2012 WL 2069561, at *30 (E.D. Cal. June 7, 2012) (recommended summary judgment for defendant correctional officer on Eighth Amendment claim where defendant conducted unclothed body search of plaintiff, where plaintiff had to squat, pull his buttocks apart and cough three times, defendant told plaintiff to show him his "ass," and defendant became sexually aroused), adopted by 2012 WL 3756483 (E.D. Cal. Aug. 28, 2012). See also Grisham v. County of Los Angeles, 2019 WL 2360897, at *11 (C.D. Cal. Apr. 26, 2019) (female prisoner failed to identify "any facts raising a reasonable inference that the deprivation was sufficiently serious to support an Eighth Amendment claim," based on allegations that female guards made vulgar comments, shined flashlight up female prisoner's buttocks and vagina for two to three minutes, while laughing and making lustful comments or sexual innuendo, during visual unclothed body searches), adopted by, 2019 WL 2358914 (C.D. Cal. June 3, 2019).

///

Cross-gender searches are viewed differently. Hunt, 2020 WL 564815, at *5. An Eighth Amendment violation has been found where the female prisoner plaintiffs, found to be particularly vulnerable to a severe psychological injury from the search, are subjected to random cross-gender clothed body searches unrelated to prison security. Id., citing Jordan v. Gardner, 986 F.2d 1521, 1525-28 (9th Cir. 1993) (finding cross-gender body search policy constituted unnecessary "infliction of pain" under the Eighth Amendment where women inmates had "shocking histories of verbal, physical, and, in particular, sexual abuse" by men).

In the Fourth Amendment context, the Ninth Circuit concluded that a cross-gender strip search of a pretrial detainee in a non-emergency situation where same-sex guards were available was an unreasonable intrusion on the detainee's Fourth Amendment rights. Hunt, 2020 WL 564815, at *5, citing Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc); see also Shorter v. Baca, 895 F.3d 1176, 1189 (9th Cir. 2018) (under Fourteenth Amendment challenge, court concluded that county's search practices were not entitled to deference where county did not offer reason for leaving mentally ill female inmates shackled to their cell doors for hours, virtually unclothed, and without access to meals, water or a toilet, visible to both male and female prison guards on patrol).

The Fourth Amendment applies to the invasion of bodily privacy in prisons. Uvalles v. Jaquez, No. C 09-5221 RMW PR, 2013 WL 1283390, at *8–9 (N.D. Cal. Mar. 27, 2013), citing Bull v. San Francisco, 595 F.3d 964, 974–75 (9th Cir.2010) (en banc); Michenfelder, 860 F.2d at 333. To analyze a claim alleging a violation of this privacy right, the court must apply the test set forth in Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and determine whether a particular invasion of bodily privacy was reasonably related to legitimate penological interests. See Bull, 595 F.3d at 973; Michenfelder, 860 F.2d at 333–34.

Although a cross-gender strip search that involves touching the inmate's genitalia and searching inside his anus is unreasonable, Byrd, 629 F.3d 1135, 1142 (9th Cir.2011) (en banc), that does not mean that all cross-gender searches are unreasonable, or that prisoners of one gender may not be guarded by guards of the other gender. Uvalles, 2013 WL 1283390, at *8–9. In Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir. 1985), the Ninth Circuit upheld a system of

assigning female officers within a correctional facility such that they occasionally viewed male inmates in various states of undress and conducted routine pat-downs of fully clothed inmates. Id., citing see Byrd, 629 F.3d at 1142.  Assigned positions of female guards that required only infrequent and casual observation, or observation at a distance, of unclothed male prisoners and that are reasonably related to prison needs are not so degrading as to warrant court interference. Id., citing see Michenfelder, 860 F.2d at 334; see also Jordan, 986 F.2d at 1524–25 (en banc) (privacy interest in freedom from cross-gender clothed body searches not "judicially recognized").  The issue is whether officers regularly or frequently observe unclothed inmates of the opposite sex without a legitimate reason for doing so.  Uvalles, 2013 WL 1283390, at *8–9, citing see Michenfelder, 860 F.2d at 334.

The mere making of harassing comments to a prisoner does not give rise to a federal civil rights claim.  Hunt, 2020 WL 564815, at *5, citing see Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (verbal harassment is not cognizable as a constitutional deprivation under § 1983); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under § 1983), overruled in part on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).  This is true even when the verbal harassment has sexual undertones.  Hunt, 2020 WL 564815, at *5, citing see Austin, 367 F.3d at 1172 ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment.") (citation omitted).

Here, Plaintiff's allegations do not rise to the level of an Eighth Amendment claim.  While being subjected to a contraband search may be considered a serious deprivation in itself, Plaintiff has not alleged facts showing that any of the Defendants had a sufficiently culpable state of mind for an Eighth Amendment violation.  Nor do the conditions of the search rise to the level of an Eighth Amendment violation.  Plaintiff's allegations do not establish that any of the Defendants acted maliciously and sadistically to harm Plaintiff.  Plaintiff alleges that the search was unsanitary, but he has not described conditions more unsanitary than would be expected for such a procedure, even if it were conducted in another location.  Plaintiff has not demonstrated that

the female guard's interaction with Plaintiff was anything more than a casual observation as part of her job. There are no allegations that defendant Miller touched Plaintiff or spoke to him or anyone else during the search, or that the search lasted more than a limited period of time. Plaintiff claims he was embarrassed, but he claims no physical injuries. With respect to a Fourth Amendment claim, there are no allegations showing the search to be unreasonable under the circumstances. See Michenfelder, 860 F.2d at 332 ("[v]isual body cavity searches conducted after contact visits as a means of preventing prisoners' possession of weapons and contraband, even absent probable cause, have been found reasonable by the Supreme Court.").

Based on the foregoing, Plaintiff fails to state a cognizable claim for violation of his Fourth or Eighth Amendment rights based on the contraband search he was subjected to.

### B.     Due Process – Fourteenth Amendment

Plaintiff claims that his rights to due process under the Fourteenth Amendment were violated by Defendants. The Due Process Clause protects prisoners from being deprived of life, liberty, and property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Connor, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Since 2009, the Ninth Circuit has had conflicting opinions, some holding that there is no due process needed for short term placement, and some holding that there is a due process interest when placement is over seven days long. Wells v. Demars, No. C11-5759 BHS-JRC, 2012 WL 6059190, at *3 (W.D. Wash. Nov. 19, 2012), report and recommendation adopted, No. C11-5759 BHS-JRC, 2012 WL 6059176 (W.D. Wash. Dec. 6, 2012), and report and recommendation adopted, No. C11-5759 BHS-JRC, 2013 WL 506850 (W.D. Wash. Feb. 11, 2013), citing Meraz

v. Reppond, 2009 WL 723841(N.D.Cal. 2009) (plaintiff was on dry-cell watch for three days. The court, at the preliminary screening stage, prior to service, held that although the conditions were harsh, his placement there was simply too brief to implicate the due process clause); Harris v. Lappin, 2009 WL 789756 * 10–12 (C.D.Cal. 2009) (plaintiff was on dry-cell watch for eleven days in an allegedly unsanitary cell, the court denied a motion to dismiss, finding plaintiff had stated a viable claim); Chappell I, 2009 WL 900151 (plaintiff was on dry cell-watch for seven days, the court utilized a "privacy interest" analysis that was discussed in Mendoza and denied summary judgment finding there is a due process interest in avoiding dry-cell or "contraband watch"); Fry v. Oleshea, 2012 WL 951318 (N.D.Cal. 2012) (plaintiff was on dry-cell watch for two days, the court employed a case by case analysis and found no liberty interest because the placement was too short or, in the alternative, the court granted qualified immunity from suit).

Plaintiff has not alleged facts demonstrating that he was subject to any atypical and significant hardship for which he was entitled to the protections of due process and therefore he has not identified a liberty interest of which he was deprived. The Ninth Circuit has held "[a]n investigative contraband watch is the type of condition of confinement that is ordinarily contemplated by the sentence imposed," and avoiding CSW does not fall within a prisoner's "narrow range of protected liberty interests" that derive directly from the Fourteenth Amendment. Chappell II, 706 F.3d at 1062–63 (citation omitted). Only the most extreme changes in the conditions of confinement have been found to directly invoke the protections of the Due Process Clause . . . . [A] temporary contraband watch does not rise to this level[.]" Id. at 1063.

Therefore, Plaintiff fails to state a cognizable claim for violation of his rights to due process.

### C.  **CDCR Search Procedures**

Plaintiff alleges that defendant Sgt. Reyes failed to properly initiate the CDCR Departmental Procedure and did not issue a CDCR 114-D segregation order before ordering Plaintiff to comply with the search.

This is a state law claim. Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

Plaintiff is also advised that the Government Claims Act requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so.

Therefore, Plaintiff fails to state a claim against defendant Reyes for failing to comply with the CDCR's requirement to issue a CDCR 114-D segregation order.

## V.     CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the Complaint against any of the Defendants for violating his constitutional or other federal rights. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Therefore, Plaintiff shall be granted leave to amend the complaint. The court will provide Plaintiff with thirty days to file a First Amended Complaint curing the deficiencies identified above. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

///

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Iqbal at 678 (quoting Twombly, 550 U.S. at 555).

Plaintiff must demonstrate in his amended complaint how the conditions complained of have resulted in a deprivation of his constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The amended complaint must allege in specific terms how each named defendant is involved.

Plaintiff may not change the nature of this suit by adding unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  Also, Plaintiff is not granted leave to add allegations to the amended complaint of events that occurred after May 22, 2019, the date the original Complaint was filed.

As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

The First Amended Complaint should be clearly and boldly titled "FIRST AMENDED COMPLAINT," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Complaint, filed on May 22, 2019, is DISMISSED for Plaintiff's failure to state a claim upon which relief may be granted, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within thirty days from the date of service of this order, Plaintiff shall file a First Amended Complaint curing the deficiencies in the Complaint identified by the court;

4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:19-cv-00717-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this action be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:   **August 21, 2020**                              **/s/ Gary S. Austin**
                                                                   UNITED STATES MAGISTRATE JUDGE